| | |
|---|---|
| STATE OF SOUTH CAROLINA<br><br>COUNTY OF CHARLESTON<br><br>Mary Doe, as mother and guardian of John Doe,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>Porter-Gaud School,<br><br>　　　　　　Defendant. | IN THE COURT OF COMMON PLEAS FOR THE NINTH JUDICIAL CIRCUIT<br>CASE NO.:<br><br><br>**SUMMONS** |

YOU ARE HEREBY SUMMONED AND REQUIRED to answer the Complaint in the above-entitled action, a copy of which is served upon you, and to serve a copy of your Answer upon the attorney at their office located at 3 Wesley Drive, Charleston, SC 29407 within thirty (30) days after the date of such service, exclusive of the day of service; and if you fail to answer the Complaint within that time, judgment by default will be rendered against you for the relief demanded in the Complaint.

　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　 _s/Sandra J. Senn_____
　　　　　　　　　　　　　　　　SANDRA J. SENN
　　　　　　　　　　　　　　　　*Senn Legal, LLC*
　　　　　　　　　　　　　　　　Post Office Box 12279
　　　　　　　　　　　　　　　　Charleston, South Carolina  29422
　　　　　　　　　　　　　　　　(843) 556-4045
　　　　　　　　　　　　　　　　(843) 556-4046 (fax)
　　　　　　　　　　　　　　　　Sandy@sennlegal.com

　　　　　　　　　　　　　　　　*Attorney for Plaintiffs*

May 29, 2022
Charleston, South Carolina

ELECTRONICALLY FILED - 2022 May 29 12:05 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1002441

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br><br>COUNTY OF CHARLESTON<br><br>Mary Doe, as mother and guardian of John Doe,<br><br>            Plaintiffs,<br><br>v.<br><br>Porter-Gaud School,<br><br>            Defendant. | IN THE COURT OF COMMON PLEAS FOR THE NINTH JUDICIAL CIRCUIT<br>CASE NO.:<br><br>**COMPLAINT**<br><br>***(Jury Trial Demanded)*** |

NOW COMES Mary Doe who at the time of the incidents giving rise to this complaint was acting as a parent and natural guardian of minor son, John Doe, who is now 18 years old and no longer a minor. Both Mary and John Doe, complaining of the Defendant, asserting and alleging as follows:

**PARTIES**

1. The Plaintiff, Mary Doe is the parent and natural guardian of the then minor child and plaintiff, John Doe, and is a citizen and resident of Charleston County, South Carolina.

2. The Plaintiff, John Doe, is a citizen and resident of Charleston County, South Carolina and turned 18 years of age on July 31, 2021.

3. The Defendant, Porter-Gaud School is an independent coeducational college preparatory day school in Charleston, in the United States, state of South Carolina (Hereinafter PG).

1

**JURISDICTION AND VENUE**

4. The incidents giving rise to this complaint occurred in Charleston County, South Carolina and venue/jurisdiction is appropriate in said county in the Court of Common Pleas.

**FACTS**

5. On or around the last week of December of 2018, the then 15- year- old John Doe engaged in a consensual sexual encounter (his first) with his classmate and neighbor, Catherine Roe. The initial sexual encounter occurred at her home which was located three doors down from the Doe family.

6. Catherine Roe and John Doe were alone in the room when the sexual encounter occurred though friends were within earshot and just outside of Catherine Roe's bedroom watching television. The friends noticed that after Miss Roe and Mr. Doe went into her bedroom alone initially, then Catherine Roe exited her room wearing only a bra on the top part of her body. She then grabbed a bottle of lotion and went back inside the room where only she and John Doe were witnesses and participants to the sexual act that occurred.

7. After a short time alone, both Miss Roe and Mr. Doe came back into the television room with the other friends whereupon they ate popcorn and watched not one but two movies. At no time did any witness in the television room hear any cries for help or protests coming from Miss Roe. Once the couple exited the bedroom, none of the visiting friends noticed anything unusual in the demeanor of Roe and Doe, and in fact everyone was jovial as they enjoyed movies and snacks.

8. After Christmas break, Miss Roe went back to PG and told one of her fellow cheerleaders that she and Mr. Doe had become "friends with benefits." She was in no way upset

ELECTRONICALLY FILED - 2022 May 29 12:05 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1002441

ELECTRONICALLY FILED - 2022 May 29 12:05 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1002441

or distraught when disclosing that the two had become sexually involved, rather, she was happy about it. Doe, on the other hand, was not inclined to share news of the incident but did learn that Roe had told others of their encounter.

9. No parents were told that the couple had sex. Instead, a secret relationship developed where Miss Roe and Mr. Doe engaged in sex at least five or six more times. The acts occurred at both of their homes and one time Miss Roe snuck into another neighbor's house where Mr. Doe was spending the night with a friend. They engaged in sex in that house as well and the friend did not notice any distress of either the female or male. It was Miss Roe who asked to come over to yet another neighbor's house soliciting sex with Doe again.

10. As happens with younger couples, one party to the budding relationship became dissatisfied and in this instance it was Mr. Doe. Five months after the initial sex, Doe attempted to cut off sexual encounters and return to being neighborhood friends. Not satisfied, Miss Roe told her parents that the two had been having sex on multiple occasions, but she told them that the first encounter (when she picked up the lotion in front of other teens then entered her bedroom clad in only a bra) was non-consensual. She maintained she was forced to have sex over the holiday break at her own home but she admitted the remainder of the sexual interactions were mutually consensual.

11. Initially, the parents of Ms. Roe told Mary Doe about the interactions of their teenagers who at the time were both 15 years old. The mother of Roe said her daughter claimed she was raped initially though she did not contemporaneously tell anyone that she had been raped. Those allegations surfaced only five months after their original encounter and only after Mr. Doe had broken off the affair. Shocked, Mary Roe spoke with her son who told her he was a virgin on the night when Miss Roe claimed rape and her son, Mr. Roe, flat out denied any

3

coercion.  Mr. Roe then told his mother the details of the encounter and Mary Roe then confirmed John Doe's account of what happened with the other friends and neighbors who were in the TV room outside of the bedroom on that night.  The other witnesses confirmed Mr. Doe's account of what happened and all were surprised of the allegations of rape. Mary Roe then advised her friends and neighbors, the parents of Catherine Roe, that her son's position was that there was no forced sex and that other neighborhood kids confirmed via circumstantial evidence.

12. Initially both sets of parents had decided that the matter should go no further and that the teens should just stay apart.  Not satisfied, however, Miss Roe widened her circle of complaints to include telling Porter-Gaud school administrators/ counselors that she was a rape victim and she accused Mr. Doe as being her assailant.

13.  Rightfully, the administrators called in police to investigate Miss Roe's allegation of rape.  The investigator asked to interview the alleged victim and they were denied an interview by Miss Roe's father.  Mr. Doe, of course, denied there was any rape.  The investigators did not prosecute Mr. Roe as there was no evidence of Roe's guilt and even if Ms. Roe had told the police her side of the story, it still would have been a: "he said/she said" case with corroborating witnesses supporting Mr. Doe, not Miss Roe's account of the evening.  In reality, it was Miss Roe who was bearing false witness and committing a crime of misleading the police.

14. After police ended their investigation with no action taken against Mr. Doe, upon information and belief, Miss Roe doubled down on her false allegation of rape and continued to complain to school officials about sexual encounters even though they did not occur on school property.  Miss Roe went so far as to physically assault Mr. Doe at school on two occasions while at school and loudly calling him a rapist in front of many students, faculty and parents.  Roe's assaults and slander against Mr. Doe were brought to the attention of PG officials yet they

did not acted upon those school violations all of which had witnesses and/or should have been on camera.

15. The school had the same information as did police yet they did not rely upon police findings. Instead, PG conducted their own investigation to no avail yet they still offered to call in investigators from New York with the #MeTOO Movement in order to placate the dramatic Miss Roe and her mother. On or around the end of May of 2019, Mary Doe learned that PG officials were escalating the investigation and hiring the expensive (and at the time front page news investigators) with the #MeTooMovement to go after her beloved son and the investigation began in June of 2019, just as school was getting out for the summer.

15. Crushed, the Doe family braced for the investigation. They hired counsel and provided PG and the New York investigators with known witness information and initially agreed to allow the investigators to speak with Mr. Doe but then due to the lawyer's time constraints, the interview never occurred and was later denied once the seriousness of the investigation ended up ensnaring more than 25 students who were all sent official notices that they would have to be interviewed as to their knowledge of the alleged rape of Catherine Roe, a rape that never occurred. As it turned out, the investigators never even finished interviewing all of the witnesses as it became clear to them that no credible evidence existed against Mr. Doe. Just as it was apparent to police, it should have been apparent to PG officials who had done their own investigation, that ramping up allegations into two teenagers having sex would be harmful to both of the students and to the student witnesses as well. Yet, PG officials thought nothing of the harm these allegations would do to young Mr. Doe. Instead, they only attempted to placate the female student.

5

16. The summer of 2019 was a terrible one for the Doe family. Given that so many of Roe and Doe's fellow students were forced to participate in the witch hunt which should have been clear to any official with any common sense would not turn out well for either student, both students were harmed, especially John Doe who was still just 15 years old when confronted by his friends calling him to let him know that they would have to be witnesses for the #MeToo investigators. Still, the male and female witnesses supported Mr. Doe, not Ms. Roe and told the truth, but it was a life altering experience that scarred his reputation and wounded his feelings forever, deeply wounding his parents and other friends and family who watched him suffer as well.

17. Several of Doe's friends called to let him know that they were not allowed to hang out with him until the outcome of the investigation was announced. He and his family felt like outcasts and were deeply ashamed and embarrassed because of the public nature of the sexual allegations that were not public until PG officials made them so. PG and their investigators disclosed private information about the allegations of rape to those who had no need to know. Even though the Doe family knew that John Doe was no rapist, and even after the investigation ended in his favor, Doe suffered throughout high school and continues to suffer to this day when someone brings up the incident at parties or when he has met new girls from other schools who were later told that he was an accused rapist. Parents were skeptical of young Mr. Doe and thought less of him as a result of the rape allegations.

18. The #MeToo investigation hung over the head of the Doe family for the entire summer. No investigation was made into the allegations that Roe assaulted and slandered Doe, but the allegations of rape and the interviews went on until at some point early on the investigation was dropped.

ELECTRONICALLY FILED - 2022 May 29 12:05 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1002441

19. School officials then recklessly withheld the results of the investigation. To this day, they have not released the findings and this was AFTER counsel for the Doe's made a request to make the investigation public as well as the results. PG refused. The #MeToo investigators wrapped up the investigation much more quickly than August, but it was not until four days before school, and on August 16, 2019, did the Doe family know that Doe was even going to be allowed back in school. This was particularly disturbing for Doe who had started first grade at PG and was a lacrosse player scheduled to start his 10th year. It was also deeply concerning for his mother who had paid handsomely for her son's private school education, yet they were facing the real possibility that because the school still had not notified anyone of their negative findings, that Mr. Doe would be forced to change schools and leave his friends and teammates behind over these false allegations. If that had happened, as it appeared would happen in August of 2019, Mr. Doe would also not be eligible to receive a PG diploma which his mother had paid upward of 29k per year for him to obtain.

20. Finally, on August 16, 2019, the school merely notified him that there was no policy violation on his part and he was free to return as a student in good standing. Yet, PG officials refused to notify all of the other witnesses/students that they found no wrong-doing on the part of Mr. Doe who by then had just turned 16 two weeks earlier. School officials simply said it would be enough for the other students to *surmise* there was no wrongdoing by the fact that he was not suspended. In short, Mr. Doe was not guilty in the eyes of the school, the police and the #MeToo investigators but they refused to make that admission causing further harm and suspicion to remain regarding whether Mr. Doe was a rapist. They also allowed Roe to return to school where her jaunts and false allegations (including one time in the cafeteria after they both returned to school) continued to harm Mr. Doe and those, too, went unaddressed by the school.

In fact, counsel for PG advised counsel for Doe that the complaint by Roe was NOT unfounded and refused to tell others that it was unfounded. Thus, even after the third investigation ended with findings of no wrongdoing, PG through its' staff and lawyer continued harm to the plaintiffs by failing to publicly or even unofficially exonerate him. Instead, they said the complaint was NOT unfounded. They could have said the complaint was not substantiated. They could have stated anything to let this matter come to its' rightful end in favor of Mr. Doe, instead they continued to mince words and cower behind a rich girl's false allegations because they feared reprisal from her wealthy parents. Mr. Doe's name was never cleared by PG and PG refused to hand over the investigative materials so that Doe's lawyer could release them.

21. PG officials were reckless, willful and wanton in their sexual discrimination of a male student, Doe by:

A) falsely prosecuting him after police closed their investigation concluded that there was no wrongdoing;

B) opening and paying for an investigation with a nationally recognized group with a mission to support females over males in allegations of rape when they already knew the allegations were scant and that the evidence was overwhelmingly not in favor or Roe;

C) where they knew or should have known that said investigation should have been kept to a minimum, rather, they ramped it up to ensnare more than 25 other students which they also knew or should have known would cause permanent injury to the reputation of 15 year old Doe and even to the young lady who was scorned though she was also lying;

D) once the investigation concluded with no wrongdoing found on behalf of Doe, the school withheld their decision that he had committed no school policies for an unreasonable amount of time causing the Doe family anxiety, pain and sorrow in potentially having to find

8

another school and in not timely getting his name exonerated and for never releasing their findings to the other students who were forced to testify so that Mr. Doe could put an end to the false rumors of rape;

E) in failing to prosecute or even investigate or discipline Roe for her physical assaults and verbal assaults and slander which unlike the alleged rape actually did occur at the school, thereby discriminating against PG's male student, Doe, and not granting him equal protection and due process required by law.

## FOR A FIRST CAUSE OF ACTION
(Slander and Libel)

22.     Plaintiffs reallege and incorporate by reference the allegations set forth in the preceding paragraphs herein verbatim.

23.  The actions and lack of actions of the defendant constituted Slander and libel during the investigation and even after as they perpetuated knowingly unprovable allegations of rape.

## FOR A SECOND CAUSE OF ACTION
(Slander and Libel per se)

24.     Plaintiffs reallege and incorporate by reference the allegations set forth in the preceding paragraphs herein verbatim.

25. The actions and lack of actions by the defendant constituted Slander and libel per se as the perpetuated a known falsehood and falsely prosecuted young Mr. Doe

9

### FOR A THIRD CAUSE OF ACTION
(Negligence/recklessness/willfulness)

26.     Plaintiffs reallege and incorporate by reference the allegations set forth in the preceding paragraphs herein verbatim.

27. The actions and inactions of the defendants as referenced above amount to recklessness, willfulness and wanton behavior toward the plaintiff.

### FOR A FOURTH CAUSE OF ACTION
(Malicious Prosecution)

28.     Plaintiffs reallege and incorporate by reference the allegations set forth in the preceding paragraphs herein verbatim.

29. The actions as referenced above constituted malicious prosecution of the plaintiff.

### FOR A FIFTH CAUSE OF ACTION
### Violation of 14th Amendment
### Due Process and Equal Protection Rights and Title IX

34.     Plaintiffs reallege and incorporate by reference the allegations set forth in the preceding paragraphs herein verbatim.

35.  The actions and inactions of the defendants as stated above discriminated against plaintiff John Doe on account of his sex and violated his right to, *e.g.* Equal Protection under the law and to Due Process in violation of The fifth and 14th amendments to the United States Constitution 15 U.S.C.  Section 38 *et. seq,* Title IX and 42 U.S.C. Section 1983.

10

ELECTRONICALLY FILED - 2022 May 29 12:05 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1002441

## DAMAGES

Both of the plaintiffs were damaged not only in out- of -pocket expenses in defending the false allegations, but in resulting pain, anxiety, hurt feelings, shock, shame, grief and other tangible and intangible damages caused by the defendant.

## RELIEF

Plaintiffs respectfully request that this Court enter judgment in their favor, find that a constitutional injury and other compensable injuries have occurred and award actual, consequential, and punitive damages as well as attorneys' fees and costs, and any further relief this Court deems just and proper.

                    Respectfully submitted,

                    _s/*Sandra J. Senn*_____
                    SANDRA J. SENN
                    *Senn Legal, LLC*
                    Post Office Box 12279
                    Charleston, South Carolina  29422
                    (843) 556-4045
                    (843) 556-4046 (fax)
                    Sandy@sennlegal.com

                    *Attorney for Plaintiffs*

May 29, 2022
Charleston, South Carolina