IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| MARY DOE, *as mother and guardian of John Doe*, and JOHN DOE, | )<br>)<br>) |
| Plaintiffs, | )<br>) No. 2:22-cv-02093-DCN |
| vs. | )<br>) **ORDER** |
| PORTER-GAUD SCHOOL, | )<br>) |
| Defendant. | )<br>)<br>) |

The following matter is before the court on defendant Porter-Gaud School's ("Porter-Gaud") motion to dismiss, ECF No. 15. For the reasons set forth below, the court grants in part and denies in part the motion.

## I.  BACKGROUND

This complaint arises from Porter-Gaud's investigation into an allegation of rape between two minors who attended the school. Porter-Gaud is "an independent coeducational college preparatory day school" in Charleston, South Carolina. ECF No. 8, Amend. Compl. ¶ 3. In December 2018, the then fifteen-year-old John Doe engaged in a consensual sexual encounter with his classmate and neighbor, Catherine Roe. Id. ¶ 5. The two minors allegedly thereafter engaged in multiple sexual encounters with each other on separate occasions. Id. ¶¶ 6–9. Five months after the initial encounter, Catherine Roe told her parents that the initial encounter was non-consensual rape, though the remainder of the sexual interactions were mutually consensual. Id. ¶¶ 10–11. John Doe denies the claims of coercion on any occasion. Id. ¶ 11. Initially, both sets of

1

parents decided that the matter was settled and that the teens should just stay apart. Id. ¶ 12.

Catherine Roe, however, was not satisfied by that arrangement and instead told the Porter-Gaud school administrators and counselors that John Doe had raped her. Id. Porter-Gaud followed mandatory reporting procedures and called the police to investigate the allegations of rape. Id. ¶ 13. The police did not prosecute John Doe because "there was no evidence of [John] Doe's guilt and even if Ms. Roe had told the police her side of the story, it still would have been a: 'he said/she said' case with corroborating witnesses supporting Mr. Doe, not Miss Roe's account of the evening." Id. The police ended their investigation with no action taken against John Doe. Id. ¶ 14. Catherine Roe was also dissatisfied with this outcome, allegedly "physically assault[ing] Mr. Doe at school on two occasions . . . [and] loudly calling him a rapist in front of many students, faculty and parents." Id. Porter-Gaud thereafter brought in "investigators from New York with the #MeTOO Movement." Id. ¶ 15. John Doe's family hired counsel and provided the investigators with known witness information. Id. Eventually, the investigators dropped their investigation and Porter-Gaud notified John Doe that there was no policy violation on his part and he was free to return as a student in good standing. Id. ¶¶ 16–20. School officials refused to notify the other witnesses and students that they found John Doe had engaged in no wrongdoing. Id. ¶ 20.

Mary Doe, on behalf of her son John Doe, alleges that the investigation took a toll on her son and family emotionally, and on their family financially because they had to hire counsel. See id. ¶¶ 15–20. Mary Doe filed this complaint in the Charleston County Court of Common Pleas on May 29, 2022. ECF No. 1-1, Compl. At the time of the

complaint's filing, John Doe was an adult who turned eighteen on July 31, 2021. Compl. ¶ 2. Porter-Gaud removed the complaint to this court on July 1, 2022 pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. ECF No. 1. On July 21, 2022, Mary Doe filed an amended complaint, now the operative complaint, which named her son John Doe as a co-plaintiff (collectively, the "Does"). ECF No. 8, Amend. Compl. Porter-Gaud filed a motion to dismiss on July 1, 2022, which the court determined was mooted by the amended complaint. ECF No. 11. On August 26, 2022, Porter-Gaud again filed a partial motion to dismiss the complaint pursuant to Rule 12(b)(1) and Rule 12(b)(6). ECF No. 15. The Does responded in opposition to the motion to dismiss on September 29, 2022, ECF No. 18, to which Porter-Gaud replied on October 13, 2022, ECF No. 22. As such, the motion has been fully briefed and is now ripe for review.

## II.  STANDARD

### A.  Rule 12(b)(1)

Dismissal under Federal Rule of Civil Procedure 12(b)(1) examines whether the pleading fails to state facts upon which jurisdiction can be founded. It is the petitioner's burden to prove jurisdiction, and the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

To resolve a jurisdictional challenge under Rule 12(b)(1), the court may consider undisputed facts and any jurisdictional facts that it determines. The court may dismiss a case for lack of subject matter jurisdiction on any of the following bases: "(1) the [the pleading] alone; (2) the [pleading] supplemented by undisputed facts evidenced in the

record; or (3) the [pleading] supplemented by undisputed facts plus the court's resolution of disputed facts." Johnson v. United States, 534 F.3d 958, 962 (8th Cir. 2008) (quoting Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981)).

### B. Rule 12(b)(6)

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) ... does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999); Mylan Labs., 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III. DISCUSSION

The court first examines Porter-Gaud's jurisdictional arguments regarding standing under Rule 12(b)(1) before turning to the issue of whether the Does have failed to state a claim for relief under Rule 12(b)(6).

**A. Standing**

Porter-Gaud alleges that Mary Doe has failed to properly allege third-party standing on behalf of her son because her son is no longer a minor and was not a minor at the time the complaint was filed, even though the alleged injuries giving rise to this action occurred while he was a minor. See ECF No. 15 at 2. However, since John Doe has joined this case as a plaintiff and has standing for each of the causes of action, the court finds that plaintiffs have adequately alleged standing. See Amend. Compl.

Under Rule 12(b)(1), courts consider whether the suit constitutes a case or controversy over which federal courts have jurisdiction pursuant to Article III. See CGM, LLC v. BellSouth Telecomms., Inc., 664 F.3d 46, 52 (4th Cir. 2011). Federal courts' standing jurisprudence contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, see Lujan v. Defenders of Wildlife, 504 U.S. 555, 559–62 (1992); and prudential standing, which embodies "judicially self-imposed limits on the exercise of federal jurisdiction," Allen v. Wright, 468 U.S. 737, 751 (1984). The Article III limitations are familiar: the plaintiff must show that the conduct of which she complains has caused her to suffer an "injury in fact" that a favorable judgment will redress. See Lujan, 504 U.S. at 560–61. Although the Supreme Court has not exhaustively defined the prudential dimensions of the standing doctrine, it has explained that prudential standing encompasses at least three broad principles:

> [T]he general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.

Lexmark Intern., Inc. v. Static Control Components, Inc., 572 U.S. 118, 126 (2014) (quoting Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 12 (2004)). "[T]he part[y] invoking federal jurisdiction[] bear[s] the burden of establishing these elements." Disability Rights S.C. v. McMaster, 24 F.4th 893, 899 (4th Cir. 2022) (quoting Spokeo, Inc. v. Robins, 578 U.S. 220, 228 (2016)) (internal quotation marks omitted).

Ordinarily, a party "must assert h[er] own legal rights" and "cannot rest h[er] claim to relief on the legal rights . . . of third parties." Warth v. Seldin, 422 U.S. 490, 499 (1975). But the Supreme Court has recognized an exception where "the party asserting the right has a close relationship with the person who possesses the right [and] there is a hindrance to the possessor's ability to protect his own interests." Sessions v. Morales-Santana, 137 S. Ct. 1678, 1689 (2017) (quoting Kowalski v. Tesmer, 543 U.S. 125, 130 (2004)). Guardians have standing when they sue on behalf of minors. See Fed. R. Civ. P. 17(a) (allowing guardians and similar representatives to bring claims on behalf of others); Fed. R. Civ. P. 17(c) (allowing general guardians to sue or defend on behalf of a minor). However, in cases where the minor reaches adulthood while the court case is ongoing or before the case is filed, courts have found that parents no longer have standing to sue on behalf of that child. See, e.g., Runge v. Sanford, 2009 WL 9083917, at *1 (D.S.C. Feb. 25, 2009), report and recommendation adopted, 2009 WL 2601468, at *2 (D.S.C. Aug. 21, 2009), aff'd sub nom. Runge v. Barton, 368 F. App'x 361 (4th Cir. 2010) (holding that parents do not have standing to bring suit on behalf of their adult child absent a showing that the child is incompetent); Anderson v. Dorchester Cnty.,

6

2021 Wl 1186637, at *5 (D.S.C. Mar. 30, 2021) (finding that since the parent's child was not a minor at the time the complaint was filed, the child's minority could not be a basis for the parent's representative standing); Doe v. Mastoloni, 2016 WL 593439, at *5 (D. Conn. Feb. 12, 2016) (holding that parents no longer had standing to sue since their daughter reached adulthood while the case was ongoing but analyzing standing as though the minor had filed the case since she could choose to join the lawsuit); Schuppin v. Unification Church, 435 F. Supp. 603, 605 (D. Vt. 1977) (holding that parents did not have standing to bring suit on behalf of adult child); Avent v. District of Columbia, 2009 WL 387668, at *1 (D.D.C. Feb. 13, 2009) (dismissing mother's claims brought on behalf of son because "[t]hough a non-custodial parent has next friend standing to sue on behalf of a minor child . . . [the plaintiff's child] was not a minor at the time this suit was filed.").

Therefore, if the court finds that John Doe is an adult, his mother Mary Doe does not have representative standing. Whether an individual is a minor is determined by reference to state law. See Mulready v. Mulready, 2007 WL 1791120, at *1 (D. Conn. June 16, 2007) (citing Fed. R. Civ. P. 17(b)). South Carolina law defines minors as "persons under the age of eighteen years." S.C. Code Ann. § 15-1-320. The original complaint brought solely by Mary Doe alleged that John Doe "turned 18 years of age on July 31, 2021." Compl. ¶ 2. Thus, Mary Doe does not have representative standing herself to bring these claims on her son's behalf—he must bring them himself. Importantly, the complaint was later amended to include John Doe as a co-plaintiff. Amend. Compl. While Mary Doe initially brought the claims on John Doe's behalf in

her representative capacity, John Doe now asserts those same claims himself and has standing to do so. See Mastoloni, 2016 WL 593439, at *5.

"At least one plaintiff must demonstrate standing for each claim and form of requested relief" for that claim to proceed. Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018). "[T]he Supreme Court has made it clear that the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." Bostic v. Schaefer, 760 F.3d 352, 370 (4th Cir. 2014) (internal quotation marks omitted). Consequently, once it is established that at least one party has standing to bring the claim, no further inquiry is required as to another party's standing to bring that claim. Horne v. Flores, 557 U.S. 433, 446–47 (2009) (declining to analyze whether additional plaintiffs had standing when one plaintiff did); Watt v. Energy Action Educ. Found., 454 U.S. 151, 160 (1981) ("Because we find [one plaintiff] has standing, we do not consider the standing of the other plaintiffs.").

In the instant case, the Does allege five causes of action: (1) slander and libel; (2) slander and libel per se; (3) negligence/recklessness/willfulness; (4) malicious prosecution; and (5) violation of the John Doe's Fourteenth Amendment due process and equal protections rights and Title IX. Amend. Compl. ¶¶ 24–33. The allegations set forth by John Doe—notably, that Porter-Gaud publicly slandered his name by perpetuating allegations of rape; that the school's actions in responding to the rape allegations were reckless, willful, and wanton; that the multiple investigations constituted malicious prosecution; and that Porter-Gaud consequently violated federal laws—convey standing for this case, meaning that John Doe has adequately alleged injury-in-fact that a favorable ruling will redress. Because John Doe has standing, the court does not examine

Mary Doe's standing. See Watt, 454 U.S. at 160. For the foregoing reasons, the court denies the motion to dismiss for lack of jurisdiction brought pursuant to Rule 12(b)(1).

### B. Failure to State a Claim for Relief

Porter-Gaud further alleges that even if there is standing, Mary Doe has not pled facts that support a cause of action that would lead to individual damages for Mary Doe, nor have the Does alleged facts that amount to malicious prosecution. Upon review, the court grants Porter-Gaud's partial motion to dismiss for failure to state a claim for all claims asserted by Mary Doe and for the malicious prosecution claims brought by John Doe. The court explains below.

#### 1. Individual Damages to Mary Doe

Porter-Gaud argues that Mary Doe has not pled facts that support the allegations of individual damage to herself—meaning, she has only alleged injuries in her representative capacity on behalf of her adult son John Doe. ECF No. 15 at 1. The amended complaint alleges the Does suffered damages—including out-of-pocket expenses from defending the false allegations, as well as emotional damages—caused by Porter-Gaud, but it does not specify what exact expenses those damages reference. Amend. Compl. at 10. In their response in opposition, the Does argue for the first time that Porter-Gaud has a contractual duty to the parents who pay for their children's education "to fairly and equally treat and respect each child." ECF No. 18 at 4. Mary Doe argues that since she paid tuition to the school and Porter-Gaud accepted that payment, Porter-Gaud accepted that contractual duty and thereafter breached that duty by treating John Doe inequitably compared to Catherine Roe. Id. at 5. Porter-Gaud, in reply, explains the elements of each of the causes of action and demonstrates that even

with the amended complaint, the Does have failed to state any facts that provide Mary Doe with a cognizable claim for relief, since all the facts alleged support injuries solely suffered by John Doe. ECF No. 22 at 2–4. The court examines each cause of action as it relates to Mary Doe below.

### a. Slander and Libel & Slander and Libel Per Se

The court finds that Mary Doe has not alleged any facts that support a plausible claim for defamation of Mary Doe. "The tort of defamation allows a plaintiff to recover for injury to her reputation as the result of the defendant's communication to others of a false message about the plaintiff. Slander is a spoken defamation while libel is a written defamation or one accomplished by actions or conduct." Holtzscheiter v. Thomson Newspapers, Inc., 506 S.E.2d 497, 501 (S.C. 1998). As applied to this case, the amended complaint does not allege that Porter-Gaud spoke or wrote any statements about Mary Doe, much less any defamatory statements. See Amend. Compl. The court thus finds that Mary Doe has not adequately stated a plausible claim for relief that would support a defamation cause of action. Consequently, the court grants Porter-Gaud's partial motion to dismiss for Mary Doe's claims of slander and libel as well as slander and libel per se.

### b. Negligence/Recklessness/Willfulness

It is difficult to evaluate this claim because it is unclear what the bases are for Mary Doe's negligence claim. See Amend. Compl. ¶¶ 28–29 ("The actions and inactions of the defendants as references above amount to recklessness, willfulness and wanton behavior toward the plaintiffs."). The only clarity that the Does have provided as to this claim comes from their response in opposition to the partial motion to dismiss, where Mary Doe raises a novel breach of contractual duty claim that she somehow ties to a

negligence cause of action. Noting that a contractual duty claim typically should be pursued in a breach of contract claim not a negligence cause of action, the court first evaluates whether a negligence cause of action could encompass such a claim, and thereafter determines that it is without merit. Consequently, the court finds that Mary Doe has failed to state any facts that support her cause of action for Negligence/Recklessness/Willfulness and grants Porter-Gaud's partial motion to dismiss for failure to state a claim for that cause of action.

"[N]egligence is the failure to use due care, i.e., that degree of care which a person of ordinary prudence and reason would exercise under the same circumstances." Berberich v. Jack, 709 S.E.2d 607, 612 (S.C. 2011) (quoting Hart v. Doe, 198 S.E.2d 526, 529 (S.C. 1973)). It is often referred to as either ordinary negligence or simple negligence. Id. "Recklessness implies the doing of a negligent act knowingly; it is a conscious failure to exercise due care." Berberich, 709 S.E.2d at 612 (quoting Yaun v. Baldridge, 134 S.E.2d 248, 251 (S.C. 1964) (internal quotation marks and citation omitted)). "If a person of ordinary reason and prudence would have been conscious of the probability of resulting injury, the law says the person is reckless or willful and wanton, all of which have the same meaning—the conscious failure to exercise due care." Id. "The element distinguishing actionable negligence from willful tort is inadvertence." Id. (citing Rogers v. Florence Printing Co., 106 S.E.3d 258, 264 (S.C. 1958). In the instant case, it appears that Mary Doe asserts both a negligence and a recklessness cause of action. The court first examines the negligence cause of action given its lower threshold.

"To state a cause of action for negligence under South Carolina law, a plaintiff must show: '(1) a duty of care owed by the defendant; (2) a breach of that duty by a negligent act or omission; (3) a negligent act or omission resulted in damages to the plaintiff; and (4) that damages proximately resulted from the breach of duty.'" In re Blackbaud, Inc., Customer Data Breach Litig., 567 F. Supp. 3d 667, 679 (D.S.C. 2021) (quoting Savannah Bank, N.A. v. Stalliard, 734 S.E.2d 161, 163–64 (S.C. 2012)) (internal citations omitted). An essential element in a cause of action based upon negligence is the existence of a legal duty of care owed by the defendant to the plaintiff. Bishop v. S.C. Dep't of Mental Health, 502 S.E.2d 78, 81 (S.C. 1998). Without a duty, there is no actionable negligence. Id. The existence of a duty owed is a question of law for the courts. Doe v. Batson, 548 S.E.2d 854, 857 (S.C. 2001); see also Doe v. Greenville Cnty. Sch. Dist., 651 S.E.2d 305, 309 (S.C. 2007). "An affirmative legal duty exists only if created by statute, contract, relationship, status, property interest, or some other special circumstance." Hendricks v. Clemson Univ., S.E.2d 711, 714 (S.C. 2003).

The Does have not provided the court any facts that establish that Porter-Gaud owed Mary Doe, as John Doe's mother, a duty of care. See Cockrell v. Lexington Cnty. Sch. Dist. One, 2011 WL 5554811, at *5 n.9 (D.S.C. Nov. 15, 2011) (holding that the plaintiffs did not plead sufficient facts to establish that the school district owed the plaintiff's father a duty of care). Mary Doe asserts Porter-Gaud owed her a duty that arose from a contract between her and the school. ECF No. 18 at 4. To recognize such a duty, the court would need to find: (1) there is a valid contract between Mary Doe and Porter-Gaud, (2) that a contractual duty arises from that contract, and (3) a significant breach of that duty giving rise to a negligence cause of action under South Carolina law.

12

It is dubious whether a contract exists. Preliminarily, there is no express contract because the alleged contract of paying tuition and sending a child to school is not manifested by words, oral or written, and thus the contract would, at best, be one that is implied-in-fact. See Stanley Smith & Sons v. Limestone Coll., 322 S.E.2d 474, 477 (S.C. 1984). For an implied-in-fact contract to be valid, "[t]he parties must manifest their mutual assent to all essential terms of the contract in order for an enforceable obligation to exist." Id. (citing Edens v. Laurel Hill, Inc., 247 S.E.2d 434 (S.C. 1978)). Neither South Carolina state courts nor district courts have definitively found that the payment of tuition by itself creates an implied-in-fact contract. See Clemson Univ., 578 S.E.2d at 716–17 (finding no implied-in-fact contract between the student and university to ensure the student's NCAA eligibility for baseball because the plaintiff did not point to an identifiable contractual promise that the school failed to honor). Other circuits that have considered implied-in-fact contracts for private schools and universities have found an implied-in-fact contract to exist in circumstances where a specific provision of that contract has been violated. See, e.g., Shaffer v. George Washington Univ., 27 F.4th 754, 763 (D.C. Cir. 2022) (holding that the relationship between a university and its students is contractual in nature and therefore finding an implied-in-fact contract to provide in-person education); Ross v. Creighton Univ., 957 F.2d 410, 416 (7th Cir. 1992) (finding an implied-in-fact relationship when university promised tutoring for an academically disadvantaged athlete it recruited for baseball when the university thereafter failed to provide tutoring); but see Vurimindi v. Fuqua Sch. of Bus., 435 F. App'x 129, 133 (3d Cir. 2011) (finding no breach of contract because the plaintiff failed to point to any

specific and definite terms that could be contractually binding that the university violated).

Mary Doe attempts to establish a negligence cause of action by alleging a duty arising from an implied contract. To do so, she points to the fact that "both parents and students sign agreements to abide by school policies when a student is enrolled at Porter-Gaud," and thereafter asserts that those are "mutual promises that both Plaintiffs and Porter-Gaud are held to." ECF No. 18 at 4. She alleges that the payment of tuition creates a duty "to the parents to educate their children, provide for the safety and well-being of their children, and to fairly and equally treat and respect each child." Id. She alleges that "by accepting that payment, Porter-Gaud agreed to educate, protect, and fairly treat John Doe." Id. at 5. But Mary Doe does not specify where exactly she finds such a duty—in other words, what exact contractual provision was violated. Courts that have found an implied-in-fact contract between students and schools have relied upon violations of specific provisions of the school's codes, brochures, catalogues, or regulations to establish such a contract. See, e.g., Clemson Univ., 578 S.E.2d at 717 (finding no breach of contract because the plaintiff "ha[d] not pointed to an identifiable contractual promise that Clemson failed to honor."); Gociman, 41 F.4th at 884 (holding that the student's complaint must be specific about the source of the implied contract, the exact promises the university made to the student, and the promises the student made in return). Consequently, the court finds that Mary Doe has not pled with sufficient particularity facts that would allow the court to infer an implied-in-fact contract.

Even if the court accepts that Porter-Gaud and Mary Doe were in privity of contract—one implied by the conduct of paying tuition—that would be insufficient by

itself to establish duty.  See Ellis v. Tall Ships Charleston, LLC, 593 F. Supp. 3d 253, 265 (D.S.C. 2022).  "South Carolina common law provides no avenue for arguing that a duty may exist through contract absent a special relationship."  Id.  The court finds that there is no contract, and even if there were a contract, no special relationship exists that would allow Mary Doe to recover in tort for breach of contract.  See, e.g., S.C. State Ports Auth. v. Booz-Allen & Hamilton, Inc., 346 S.E.2d 324, 326 (S.C. 1986) (finding a special relationship between a commercial consultant and non-contracting parties who have reasonably relied on reports in taking action if the consultant knew or should have known the report would be disseminated).  Mary Doe provides no legal support to explain how she and the school have a special relationship that would allow a tort based on a breach of contract to go forward.  Therefore, Mary Doe has failed to allege facts that support a negligence cause of action, much less a recklessness cause of action.

The court grants Porter-Gaud's partial motion to dismiss for failure to state a claim with regards to Mary Doe's negligence/recklessness/willfulness cause of action.

### c.  Remaining Claims

The court agrees with Porter-Gaud and finds that Mary Doe has not adequately alleged any facts that support a claim of malicious prosecution, nor the Does' amalgamated claim for "Violation of the Fourteenth Amendment, Due Process, and Equal Protection Rights and Title IX."  See Amend. Compl.  Mary Doe was not prosecuted, consequently there was no malicious prosecution.  Further, Mary Doe has asserted no facts that support her allegation that she, personally, was denied due process, equal protection, or rights protected by Title IX.  Thus, the court grants Porter-Gaud's partial motion to dismiss for failure to state a claim with regards to those causes of action.

Upon doing so, the court finds that it has dismissed all of Mary Doe's causes of action and, in turn, dismisses her from the complaint, allowing John Doe to proceed as the sole remaining plaintiff.

### 2. Malicious Prosecution

Finally, Porter-Gaud alleges that to the extent John Doe has pled a claim for malicious prosecution, that cause of action should be dismissed since no prosecution occurred. The court agrees and grants Porter-Gaud's motion to dismiss John Doe's malicious prosecution claims for failure to state a claim.

For a plaintiff to bring a valid malicious prosecution action, judicial proceedings must be initiated against a plaintiff, meaning the plaintiff must be charged with a crime. Elletson v. Dixie Home Stores, 99 S.E.2d 384, 386 (S.C. 1957). The elements of a cause of action for malicious prosecution are: (1) the institution or continuation of original judicial proceedings; (2) its legal causation by present defendant; (3) its termination in favor of present plaintiff; (4) absence of probable cause for such proceedings; (5) presence of malice therein; and (6) damage to plaintiff by reason thereof. Pallares v. Seinar, 756 S.E.2d 128, 131 (S.C. 2014). An action for malicious prosecution fails if the plaintiff cannot prove each of the required elements by a preponderance of the evidence, including malice and lack of probable cause. Law v. S.C. Dep't of Corrs., 629 S.E.2d 642, 648 (S.C. 2006).

Porter-Gaud alleges that the amended complaint lacks any specific allegations concerning the institution or continuation of judicial proceedings. ECF No. 15 at 10. The closest that the amended complaint comes to identifying a proceeding "provides that Porter-Gaud 'falsely prosecut[ed]' Doe after the police closed their investigation." Id.

(citing Amend. Compl. ¶ 21(A)). Porter-Gaud alleges that the internal investigation by Porter-Gaud is not a civil or criminal proceeding that is required for a valid claim of malicious prosecution. Id. Since there was no judicial proceeding instituted by or at the insistence of Porter-Gaud, "no judicial proceeding was resolved in favor of Doe." Id. The court agrees.

Under South Carolina law, "[i]n order to sustain an action for malicious prosecution, once must first be charged with the commission of a crime and exonerated." Elletson, 99 S.E.2d at 386; see also Eaves v. Broad River Elec. Co-op., 289 S.E.2d 414, 415 (S.C. 1982); S. Holdings, Inc. v. Horry Cnty., 2005 WL 8144891, at *15 (D.S.C. July 14, 2005). "South Carolina case law indicates that the lowest threshold to meet the standard for a commencement of a proceeding is an arrest warrant." Gillaspie v. United States, 2022 WL 600831, at *5 (D.S.C. Oct. 7, 2022) (citing Barber v. Whirlpool Corp., 34 F. 3d 1268, 1277 (4th Cir. 1994)). Notwithstanding the multiple investigations by school, the police, and the investigators from the #MeToo movement, no arrest warrant or anything rising to the level of a prosecution occurred. Without more, neither Mary Doe nor John Doe has adequately alleged facts that support a cognizable claim for malicious prosecution. Thus, the court grants the motion to dismiss the fourth cause of action, malicious prosecution, for failure to state a claim for relief pursuant to Rule 12(b)(6).

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS IN PART and DENIES IN PART** the motion to dismiss.

**AND IT IS SO ORDERED.**

          **DAVID C. NORTON**
          **UNITED STATES DISTRICT JUDGE**

**January 6, 2022**
**Charleston, South Carolina**