IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:22-cv-2093-DCN |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| PORTER-GAUD SCHOOL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

  This matter is before the court on plaintiff John Doe's motion to compel, ECF No. 164. For the reasons set forth below, the court grants the motion in part and denies the motion in part.

## I. BACKGROUND

  Defendant Porter-Gaud School ("Porter-Gaud") is "an independent coeducational college preparatory day school" in Charleston, South Carolina. ECF No. 62, 2d Amend. Compl. ¶ 2. In general, this case arises out of Porter-Gaud's investigation into a student's claims that she was raped by another student.

  In December 2018, the then fifteen-year-old John Doe engaged in an allegedly consensual sexual encounter with his classmate and neighbor, Catherine Roe ("Roe"). Id. ¶ 9. The two engaged in multiple sexual encounters with each other on separate occasions. Id. ¶¶ 12–13. Five months after the initial encounter, Roe told her parents that the initial encounter was non-consensual rape, though the remainder of the sexual interactions were mutually consensual. Id. ¶¶ 14. John Doe denies the claims of coercion on any occasion. Id. ¶ 15. Initially, both sets of parents decided that the matter was settled and that the teens should just stay apart. Id. ¶ 16.

1

Roe, however, was not satisfied by that arrangement and instead told the Porter-Gaud school administrators and counselors that John Doe had raped her. Id. Porter-Gaud called the police to investigate the allegations of rape. Id. ¶ 17. The police did not arrest John Doe because "there was no evidence of [John] Doe's wrongdoing" and "[e]ven if Ms. Roe had told the police her side of the story, . . . it still would have been a: 'he said/she said' case with corroborating witnesses supporting Mr. Doe, not Miss Roe's account of the evening." Id. The police ended their investigation with no action taken against John Doe. Id. ¶ 18. Roe was dissatisfied with this outcome and purportedly "harassed, slandered, slapped and pushed [John] Doe publicly at school (twice)" as a result. Id. ¶ 22. Porter-Gaud thereafter brought in T&M Protection Resources, LLC ("T&M"), "investigators from New York with the #MeTOO Movement." Id. ¶¶ 20–21. Eventually, the investigators dropped their inquiry, and Porter-Gaud notified John Doe that there was no policy violation on his part and that he was free to return as a student in good standing. Id. ¶¶ 24–27.

This case has been on the court's docket since July of 2022 and still has yet to conclude discovery, resulting in a lengthy procedural history. See ECF No. 1. The court issued an order severing and remanding all of John Doe's state law claims on July 28, 2025 (the "July Order"), ECF No. 139, leaving before the court only his single, amalgamated federal cause of action for "Violation of Fourth and Fourteenth Amendment Due Process and Equal Protection/Civil Rights and Title IX" that is comprised of only two paragraphs, 2d Amend. Compl. ¶¶ 45–46. In its July Order, the court provided a thorough review of the procedural history of this case, and the court now incorporates that history into this order in full. ECF No. 139 at 1–16.

The instant discovery dispute arises from twenty-three (23) documents contained in Porter-Gaud's tenth privilege log. ECF No. 164 at 3. John Doe filed a motion entitled "plaintiff's supplemental opposition to defendant's brief in support of summary judgment 'independent of motion[,]' " which the court treats as a motion to compel because it seeks production of the previously described documents. ECF No. 164 at 1, 3. Porter-Gaud provided the twenty-three (23) disputed documents to the court for in camera review and filed a brief opposing production of the documents on November 6, 2025. ECF No. 165. As such, this matter is fully briefed and now ripe for the court's review.

## II.  STANDARD

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides for a broad scope of discovery that includes

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Moreover, information need not be admissible in evidence to be discoverable. Id.

Rule 37(a) provides a mechanism for a party to challenge the non-disclosure of documents allegedly within the scope of discovery if the opposing "party fails to produce [the requested] documents." Fed. R. Civ. P. 37(a)(3)(B)(iv). The party "resisting discovery . . . bears the burden of persuasion" on the merits. Eramo v. Rolling Stone LLC, 314 F.R.D. 205, 209 (W.D. Va. 2016). The court has "broad discretion in managing discovery, including whether to grant or deny

a motion to compel." Id. (citing Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., 43 F.3d 922, 929 (4th Cir. 1995)).

## III.  DISCUSSION

Of the twenty-three (23) documents at issue, Porter-Gaud claims attorney-client privilege over all but one of the documents.[1]  See ECF Nos. 164-2; 165 at 7.  Porter-Gaud asserts that the remaining non-privileged document should not be produced under the work product doctrine.  ECF No. 165 at 7.  The court takes up Porter-Gaud's attorney-client privilege and work product doctrine claims in turn.

### A. Attorney-Client Privilege

Since the court issued its July Order severing and remanding John Doe's state law claims, the only remaining claim before the court is John Doe's single, federal claim, alleging that Porter-Gaud violated Title IX.  2d Amend. Compl. ¶¶ 45–46.  As such, the court must apply the federal common law to Porter-Gaud's claims of privilege.  See Fed. R. Evid. 501 (providing that claims of privilege "shall be governed by the principles of the common law" except with respect to state law claims); Capetta v. GC Servs. Ltd. Partnership, 266 F.R.D. 121, 125 (E.D. Va. 2009) ("In a federal question case, federal common law supplies the applicable law of privilege.").

The privilege "protects the substance of communications made in confidence by a client to his attorney[ ]" as well as "communications by the lawyer to his [or her]

---

[1] John Doe seeks production of T&M's report on the incident between John Doe and Roe.  ECF No. 164-2 at 1.  In its in camera submission, Porter-Gaud indicates that this document has been produced and so the court dispenses with consideration of this document in its analysis.  This leaves twenty-one (21) documents over which Porter-Gaud has asserted attorney-client privilege and one (1) document over which it asserts work product protection.

4

client[.]" U.S. v. (Under Seal), 748 F.2d 871, 874 (4th Cir. 1984). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). The Fourth Circuit has made clear "that fact finding which pertains to legal advice counts as professional legal services." In re Allen, 106 F.3d 582, 603 (4th Cir. 1997) (internal quotation marks and citation omitted). Thus, when a client retains a lawyer to investigate and provide legal advice based on that investigation, the attorney-client privilege is triggered. See id. (citing In re Grand Jury Subpoena, 599 F.2d 504, 510 (2d Cir. 1979)).

The twenty-one (21) documents over which Porter-Gaud has asserted the privilege are emails between Porter-Gaud officials and its attorney during the fall of 2020 as Porter-Gaud navigated the aftermath of the incident between John Doe and Roe. See ECF Nos. 164-2; 165 at 2–3. Porter-Gaud sought legal advice and investigative assistance from its attorney due to the sensitive nature of the situation as well as threats of litigation from John Doe. ECF No. 165 at 2–3, 7; see also ECF No. 164 at 4. In the twenty-one (21) emails, Porter-Gaud sought legal advice on how to navigate the situation, and its attorney provided the requested advice. Because the emails consist of communications between attorney and client that were aimed at providing legal and investigative services to the client, the court is satisfied that the privilege applies. See U.S. v. (Under Seal), 748 F.2d at 874; In re Allen, 106 F.3d at 603. Accordingly, the

twenty-one (21) emails over which Porter-Gaud has asserted the privilege will not be produced in discovery.

### B. Work Product Protection

Porter-Gaud invokes the work product doctrine to prevent production of the only remaining document at issue in its tenth privilege log. ECF No. 165 at 4. The document is an email sent from a Porter-Gaud communications director to the headmaster concerning language that was included in the school's sexual abuse prevention policy.[2]

A document is protected work product if has been "prepared because of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." Natl'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., 967 F.2d 980, 984 (4th Cir. 1992). The proponent of the protection must establish that the prospect of litigation is the "driving force behind the preparation of each requested document[.]" Id. Assertions of work product protection are "narrowly and strictly construed" to confine the protection to the "narrowest possible limits consistent with the logic of its principle." RLI Ins. Co. v. Conesco, Inc., 477 F. Supp. 741, 748 (E.D. Va. 2007) (internal quotation marks and citations omitted).

There are two categories of work product protection: opinion work product and ordinary work product. State Farm Fire and Cas. Co. v. Admiral Ins. Co., 225 F. Supp. 3d 474, 483 (D.S.C. 2016). Opinion work product is work product related to the "mental impressions, conclusions, opinions, [and] legal theories of a party's attorney or other

---

[2] The email is assigned the document identification number "REL000000394" in Porter-Gaud's tenth privilege log. ECF No. 164-2 at 8.

representative concerning the litigation." See Fed. R. Civ. P. 26(b)(3)(B); Nat'l Union Fire Ins. Co., 967 F.2d at 983. Opinion work product is "immune to the same extent as attorney-client privilege communication." Nat'l Union Fire Ins. Co., 967 F.2d at 984. Ordinary work product, on the other hand, applies to "[a]ll other documents and tangible things prepared in anticipation of litigation or for trial[,]" id., and may be discovered only if the party seeking production of the documents shows that the documents are (1) "otherwise discoverable[,]" as well as (2) a "substantial need for the materials to prepare its case" and (3) an inability to obtain a "substantial equivalent" of the work product without "undue hardship," see Fed. R. Civ. P. 26(b)(3)(A)(i)–(ii).

Porter-Gaud argues that the protection applies to the email because John Doe "had already threatened the school with litigation over the school's engagement of T&M to investigate the claims made against him." ECF No. 165 at 4; see also ECF No. 164 at 4. Porter-Gaud represents that the email was prepared in response to a request from the headmaster to assess the litigation threat posed by John Doe. ECF No. 164 at 4. Porter-Gaud further submits that the "email sheds light on a school employee's mental impressions about that threat," giving the email absolute protection from discovery. Id.

The court finds that the email is not protected under the work product doctrine because the school has failed to show that the driving force behind the preparation of the document was the prospect of litigation. See Natl'l Union Fire Ins. Co., 967 F.2d at 984; In Re Dominion Dental Servs. USA, Inc. Data Breach Litig., 429 F. Supp. 3d 190, 194 (E.D. Va. 2019) ("Defendants . . . have burden of demonstrating the applicability of the work product doctrine."). In the email, the communications director merely states that certain language pertaining to T&M was included in the school's sexual abuse prevention

7

policy and then excerpts that language. The excerpted language describes Porter-Gaud's partnership with T&M and informs students and parents as to how T&M would serve as a resource in reporting sexual abuse. The email contains no mention of any threatened litigation and does not provide any insight into the communication director's thoughts concerning threatened litigation.

Even if John Doe had not made a threat of litigation regarding the T&M investigation, surely Porter-Gaud would still have undertaken the effort to include language in its sexual abuse prevention policy that informs students and parents as to the purpose behind its retention of T&M as a resource for sexual abuse reporting. Furthermore, the headmaster would still have good reason to request information regarding the contents of a school policy pertaining to T&M regardless of whether there was a litigation threat arising from the school's partnership with T&M. Although Porter-Gaud indicates that its headmaster requested the information in the email to assess litigation threats, ECF No. 165 at 4, it has not provided the court with any argument or evidence demonstrating that the headmaster would not have requested this information absent the threat of litigation. See In re Dominion Dental Servs. USA, Inc. Data Breach Litig., 429 F. Supp. 3d at 194 (granting motion to compel when defendants failed to show that driving force underlying creation of report was litigation because report "would have been prepared in a substantially similar form absent the threat of litigation." (internal quotation marks and citation omitted)); RLI Ins. Co., 477 F. Supp. 2d at 477 (compelling responses to deposition questions when party provided "no specific evidence that it would have conducted the . . . investigation differently had no litigation been anticipated."); In re Royal Ahold N.V. Sec. & ERISA Litig., 230 F.R.D. 433, 436

(D. Md. 2005) (granting motion to compel production of memoranda relating to investigation when it "would have been undertaken even without the prospect of preparing a defense to a civil suit."). Consequently, Porter-Gaud has not met its burden of establishing the applicability of the work product doctrine over the remaining email at issue in its tenth privilege log.[3]  The court thus compels production of this email.

## IV.   CONCLUSION

For the foregoing reasons, the court **DENIES** John Doe's motion to compel production of the twenty-one (21) emails over which Porter-Gaud has asserted attorney-client privilege. ECF Nos. 164; 164-2. The court **GRANTS** John Doe's motion to compel production of the email over which Porter-Gaud has asserted work product protection. ECF Nos. 164; 164-2 at 8.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**February 16, 2026**
**Charleston, South Carolina**

---

[3] The court need not address Porter-Gaud's argument that John Doe has not shown substantial need and undue hardship pursuant to Federal Rule of Civil Procedure 26(b)(3)(A), ECF No. 165 at 6, because Porter-Gaud has not met its initial burden of demonstrating the applicability of the work product doctrine, see Republican Party of N.C. v. Martin, 136 F.R.D. 421, 429 (E.D.N.C. 1991) (Once the party asserting the doctrine establishes "all elements that trigger protection[ ] . . . [t]he burden then shifts to the party seeking discovery to show[ ] . . . substantial need and undue hardship.") (first emphasis in original).