**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:22-cv-02093-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| PORTER-GAUD SCHOOL, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The following matter is before the court on plaintiff John Doe's ("Doe") motion

for leave to amend the complaint (the "first motion for leave"), ECF No. 153, and Doe's

motion for leave to amend the complaint and file supplemental briefing opposing

defendant Porter-Gaud School's ("Porter-Gaud") motions for summary judgment (the

"second motion for leave"), ECF No. 170.  Also before the court is Porter-Gaud's motion

to reconsider the court's prior order severing and remanding Doe's state law claims to the

Charleston County Court of Common Pleas, ECF No. 166.  For the reasons set forth

below, the court: (1) denies Doe's first motion for leave; (2) grants in part and denies in

part Doe's second motion for leave; and (3) denies Porter-Gaud's motion to reconsider.

## I.  BACKGROUND

### A.  Factual Background

Defendant Porter-Gaud School ("Porter-Gaud") is "an independent coeducational

college preparatory day school" in Charleston, South Carolina.  ECF No. 62, 2d Amend.

Compl. ¶ 2.  In general, this case arises out of Porter-Gaud's investigation into a student's

claims that she was raped by another student.

1

In December 2018, the then fifteen-year-old Doe engaged in an allegedly consensual sexual encounter with his classmate and neighbor, Catherine Roe ("Roe").  Id. ¶ 9.  The two engaged in multiple sexual encounters with each other on separate occasions.  Id. ¶¶ 12–13.  Five months after the initial encounter, Roe told her parents that the initial encounter was non-consensual rape, though the remainder of the sexual interactions were mutually consensual.  Id. ¶¶ 14.  Doe denies the claims of coercion on any occasion.  Id. ¶ 15.  Initially, both sets of parents decided that the matter was settled and that the teens should just stay apart.  Id. ¶ 16.

Roe, however, was not satisfied by that arrangement and instead told Porter-Gaud school administrators and counselors that John Doe had raped her.  Id.  Porter-Gaud called the police to investigate the allegations of rape.  Id. ¶ 17.  The police did not arrest Doe because "there was no evidence of Doe's wrongdoing" and "[e]ven if Ms. Roe had told the police her side of the story, . . . it still would have been a: 'he said/she said' case with corroborating witnesses supporting Mr. Doe, not Miss Roe's account of the evening."  Id.  The police ended their investigation without taking any action against Doe.  Id. ¶ 18.  Roe was dissatisfied with this outcome and purportedly "harassed, slandered, slapped[,] and pushed Doe publicly at school (twice)" as a result.  Id. ¶ 22.  Porter-Gaud thereafter brought in T&M Protection Resources, LLC ("T&M"), "investigators from New York with the #MeTOO Movement."  Id. ¶¶ 20–21.  Eventually, the investigators dropped their inquiry, and Porter-Gaud notified John Doe that there was no policy violation on his part and that he was free to return as a student in good standing.  Id. ¶¶ 24–27.

### B. Procedural History

The court issued an order severing and remanding all of Doe's state law claims on July 28, 2025 (the "July Order"), ECF No. 139, leaving before the court only his single, amalgamated federal cause of action entitled "Violation of Fourth and Fourteenth Amendment Due Process and Equal Protection/Civil Rights and Title IX" that contains one paragraph of substantive factual allegations, 2d Amend. Compl. ¶¶ 45–46. Porter-Gaud moved for the court to reconsider the July Order on November 6, 2025. ECF No. 166. Doe responded in opposition on November 17, 2025, ECF No. 167, to which Porter-Gaud did not reply.

On August 21, 2025, Doe moved to amend the operative complaint (the "complaint").[1] ECF No. 153. Porter-Gaud responded in opposition on September 12, 2025, ECF No. 161, to which Doe offered no reply.

On February 16, 2026, the court issued an order (the "February Order") requiring Porter-Gaud to produce in discovery a single email (the "T&M email") sent from a school communications director to the head of school regarding Porter-Gaud's relationship with T&M. ECF No. 169. The February Order concluded discovery in a case that has been on the court's docket since July of 2022. See ECF No. 1. On February 26, 2026, Doe again moved for leave to amend the complaint to include allegations pertaining to the T&M email. ECF No. 170. In the same motion, Doe sought leave to file supplemental briefing in opposition to Porter-Gaud's motions for summary judgment to explain the potential impact of the T&M email on those dispositive motions. Id.

---

[1] The operative complaint is Doe's second amended complaint. See 2d Amend. Compl.

3

Porter-Gaud responded in opposition on March 12, 2026, ECF No. 171, to which Doe offered no reply.  As such, the instant motions are fully briefed and now ripe for the court's review.

## II.   STANDARD

### A.  Motion for Leave to Amend Complaint

"[A]fter the deadlines provided by a scheduling order have passed, the [Rule 16(b)] good cause standard must be satisfied to justify leave to amend the pleadings." Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008).  Rule 16(b)'s good cause standard "focuses on the timeliness of the amendment and the reason for its tardy submission; the primary consideration is the diligence of the moving party." Montgomery v. Anne Arundel Cnty., 182 F. App'x 156, 162 (4th Cir. 2006); see RFT Mgmt. Co., LLC v. Powell, 607 F. App'x 238, 242 (4th Cir. 2015).  "In seeking leave to amend, the 'movant must demonstrate that the reasons for the tardiness of his motion justify a departure from the rules set by the court in its scheduling order.' "  Thomason v. Toyota Motor Eng'g & Mfg. N. Am., Inc., 2017 WL 10901214, at *6 (D.S.C. Mar. 6, 2017) (citing United States v. Godwin, 247 F.R.D. 503, 506 (E.D.N.C. 2007)).

"If the movant satisfies Rule 16(b)'s 'good cause' standard, [he] must then pass the requirements for amendment under Rule 15(a)." Dilmar Oil Co. v. Federated Mut. Ins. Co., 986 F. Supp. 959, 980 (D.S.C. 1997).  Under Rule 15, a party may amend a pleading as a matter of course within 21 days after serving it; however, in all other cases, a party may amend its pleading only with the opposing party's consent or the court's leave.  Fed. R. Civ. P. 15(a).  "The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Rule 15(a)(2) standard favors allowing a

proposed amendment to give the plaintiff "an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962).  As such, "a motion to amend [pursuant to Rule 15(a)(2)] should be denied 'only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.' "  HCMF Corp. v. Allen, 238 F.3d 273, 276 (4th Cir. 2001) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999)) (emphasis omitted).  "[T]he grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant . . . leave without any justifying reason" constitutes an abuse of discretion.  Pittston Co. v. United States, 199 F.3d 694, 705 (4th Cir. 1999).

### B.  Motion to Reconsider

When a district court issues an interlocutory order " 'that adjudicates fewer than all of the claims [in a case],' the court retains discretion to revise the order 'at any time before the entry of a judgment adjudicating all the claims.' "  Carlson v. Boston Sci. Corp., 856 F.3d 320, 325 (4th Cir. 2017) (quoting Fed. R. Civ. P. 54(b)).  In contrast to "motions to reconsider final judgments pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, Rule 54(b)'s approach" gives the district court "broader flexibility to revise interlocutory orders" prior to final judgment as "new facts or arguments come to light[ ]" in ongoing litigation.  Carlson, 856 F.3d at 325 (emphases in original).  "[T]he power to reconsider and modify its interlocutory judgments[ ]" is "committed to the discretion of the district court[.]"  Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 515 (4th Cir. 2003) (citations omitted).

Nevertheless, this discretion is "not limitless[ ]" because courts are constrained to consider their interlocutory rulings "as [the] law of the case." Carlson, 856 F.3d at 325 (citations omitted). "The law-of-the-case doctrine provides that in the interest of finality, 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.' " Id. (quoting TFWS, Inc. v. Franchot, 572 F.3d 186, 191 (4th Cir. 2009)). Consequently, a district court "may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) "a subsequent trial produc[ing] substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice." Carlson, 856 F.3d at 325 (internal quotation marks and citations omitted). The standard therefore closely resembles the Rule 59(e) standard for motions to reconsider a final judgment but differs in that it permits revision on account of "potentially different evidence discovered during litigation as opposed to the discovery of 'new evidence not available at trial.' " Id. (quoting Pac. Ins. Co. v. Am. Nat. Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998)).

### III.   DISCUSSION

The court first takes up Porter-Gaud's motion to reconsider before turning to Doe's first and second motions for leave.

### A.  Porter-Gaud's Motion to Reconsider the Court's July Order

Porter-Gaud's motion to reconsider seeks to bring Doe's state law claims back into federal court, arguing that Doe's subsequent filings in this suit demonstrate that his federal claim "involves a great deal of the same factual assertions and evidence as the remanded state law claims." ECF No. 166 at 3–4. In opposition, Doe counters that the motion should be denied because the July Order was a proper exercise of the court's

discretion to remand Doe's state law claims. ECF No. 167 at 2. Doe further submits that Porter-Gaud's motion is untimely as it comes "nearly four months" after the court issued the July order. Id.

In the July Order, the court remarked that "[i]f there were ever a case in which the state issues substantially predominated over the federal, it would be this one." ECF No. 139 at 19. The court noted "the significant time and effort spent" litigating the state law issues as compared to the minimal attention given to Doe's sole federal cause of action. Id. at 19–24. Considering the parties had "fail[ed] to mention" the federal cause of action throughout three years of discovery and the many "clear defects" in Doe's federal cause of action, the court found that "the parties clearly considered [Doe's] state claims more important than his federal [claims]." Id. at 24. The court further found "a difference in the proof and scope of the claims based on the sizeable number of the T&M investigation documents that are related to the state claims as opposed to the federal funding issues . . . related to the federal claim." Id. For these reasons, the court declined to permit "a federal tail to wag what [was] in substance a state dog[ ]" and concluded that remand of the state claims was appropriate pursuant to 28 U.S.C. § 1367(c). Id. (specifically finding that "Doe's state claims substantially predominate over his federal claim.") (internal quotation marks and citation omitted).

Porter-Gaud now seeks to bring the state law claims back to federal court because subsequent discovery shows that Doe's federal claim, in actuality, "turn[s] on many of the same facts as the remanded state claims." ECF No. 166 at 4. While the court did identify differences in the proof and scope of the state and federal claims in the July Order, it is hardly surprising that—when putting aside issues relating to federal

funding—Doe's federal claim also arises from the school's investigation into the allegations of rape levelled against him in 2019. See 2d Amend. Compl. ¶ 46. And this unsurprising development does nothing to mitigate other justifications for remand discussed in the July Order—primarily the many defects of the sparse allegations underlying Doe's federal claim and the parties' failure to devote any time or attention to the federal claim. See ECF No. 139 at 19–24. Because Porter-Gaud has not identified new evidence, a change in applicable law, or a clear error as a ground for reconsideration, the court will deny the motion. See L.D. v. Anne Arundel Cnty. Pub. Schs., 2020 WL 1675987, at *2 (D. Md. Apr. 6, 2020) (denying motion to reconsider because purportedly "new evidence[ ]" presented by plaintiffs would not have altered the court's prior decision).

### B. Doe's First and Second Motions for Leave to Amend

Doe has filed two motions to amend his complaint, offering separate justifications for amendment in each motion. See ECF Nos. 153, 170. In his first motion for leave, Doe states that he seeks to "supplement [the complaint] with additional facts discovered in the past three years" and to "add that the school receives federal funding . . . ." ECF No. 153 at 1. In his second motion for leave, Doe seeks to amend the complaint to include allegations related to the T&M email recently produced by Porter-Gaud. ECF No. 170 at 3–4. In addition, Doe seeks leave to file a supplemental brief in opposition to Porter-Gaud's motions for summary judgment to explain the T&M email's potential impact on those dispositive motions. Id.

As a preliminary matter, Doe's first motion for leave was filed 678 days after the deadline for amending pleadings set forth in the court's scheduling order. Compare ECF

8

No. 50 ¶ 4 (setting a deadline of October 13, 2024 for amendments to pleadings), with ECF No. 153 (filed on August 21, 2025). Doe's second motion was filed at an even later date. See ECF No. 170 (filed on February 26, 2026). Pursuant to Rule 16(b), a motion to amend the complaint after a deadline set forth in the scheduling order "shall only be granted upon a showing of 'good cause.' " Montgomery, 182 F. Appx. at 162. In determining whether the plaintiff has shown good cause, the court considers the "timeliness of the amendment and the reason for its tardy submission" with the "primary consideration" being "the diligence of the moving party." Id. The court may also consider "whether the moving party acted in good faith, the length of the delay and its effects, and whether the delay will prejudice the non-moving party." G. W. Aru, LLC v. W. R. Grace & Co.-Conn., 344 F.R.D. 446, 449 (D. Md. 2023) (quoting Elat v. Ngoubene, 993 F. Supp. 2d 497, 520 (D. Md. 2014)). If the plaintiff is able to satisfy the good cause standard of Rule 16(b), the court then considers whether the proposed amendment meets Rule 15(a)(2)'s standard that directs the court to "freely give leave [to amend] when justice so requires." See Fed. R. Civ. P. 15(a)(2); Elat, 933 F. Supp. 2d at 520.

### 1. First Motion for Leave

Beginning with the first motion for leave, Doe does not identify or address Rule 16(b)'s good cause standard. See ECF No. 153. Indeed, Doe offers little, if any, substantive basis for the court to grant his motion. See id. To start, Doe states that Porter-Gaud "will not be prejudiced because the school is aware of the factual developments that have now shaped this case with many instances of sex-based bias after taking eleven depositions . . . and after numerous discovery admissions by the defense."

9

Id. at 1. Doe provides no corresponding citation to the record in support of this assertion, but he does cite to Chute v. Walker, 281 F.3d 314, 319 (1st Cir. 2002) without explaining the relevance of the citation to his assertion.[2] Id. Doe then identifies the Rule 15(a)(2) standard for amending pleadings, arguing that leave to amend "should be freely granted at this stage of the litigation" because "justice so requires for [the] reasons . . . set forth in the amended pleading."[3] ECF No. 153 at 1 (citing Fed. R. Civ. P. 15(a)(2)) (emphasis added). Doe concludes his first motion for leave by stating "[n]o separate memorandum of law is being filed herewith as all grounds for this motion are contained herein as well as in ECF #147, ECF #144[,] and in Plaintiff's opposition to the defendant's second motion for summary judgment which is due on August 25, 2025."[4] ECF No. 153 at 1.

Porter-Gaud, for its part, provides the court with a well-reasoned argument in support of denying Doe's first motion for leave. See ECF No. 161. Although Porter-

---

[2] In Chute, at the portion of the opinion cited by Doe, the First Circuit analyzed whether a district court had erred in sua sponte dismissing several of a plaintiff's causes of action, holding that such dismissals may stand "if it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile[.]" 281 F.3d at 319. The portion of the Chute opinion cited by Doe is therefore, at best, only tangentially relevant to whether good cause exists for granting leave to amend under Rule 16(b) or whether justice requires granting leave to amend under Rule 15(a)(2). See id.

[3] The court is unable to ascertain any basis for allowing the amended pleading from the amended pleading itself. See ECF No. 153-1.

[4] Again, Doe provides no citation to the portions of these past (and future) filings that supposedly support his request for leave to amend. See ECF No. 153 at 1. Docket entry 144 is Doe's two-page motion seeking leave to file additional pages in response to Porter-Gaud's motion for summary judgment. See ECF No. 144. Docket entry 147 is Doe's opposition brief to Porter-Gaud's motion for summary judgment and "reply" to the court's July Order. See ECF No. 147 at 1. The brief contains some argument in its "Background & Procedural History" section as to why the court should refrain from sua sponte dismissing Doe's federal claim and mentioned that he intended to file a motion seeking leave to amend. Id. at 2–6. The brief also explained why counsel felt that "no responsive brief was due[ ]" in response to Porter-Gaud's motion for summary judgment. Id. at 6. Finally, Doe's first motion for leave references arguments in his opposition brief to Porter-Gaud's second motion for summary judgment, which had not been filed at the

Gaud does not discuss Rule 16(b)'s good cause standard, it does assert that allowing Doe's proposed amendment would be unduly prejudicial to the school, and district courts in this circuit have considered undue prejudice to be a relevant factor in the Rule 16(b) good cause analysis. See Elat, 993 F. Supp. 2d at 520; Tawwaab v. Va. Linen Serv. Inc., 729 F. Supp. 2d 757, 768–69 (D. Md. 2010). Porter-Gaud argues that prejudice would result simply due to the length of time that has passed since several key deadlines and dates. ECF No. 161 at 8–9 (noting that 678 days have passed since the scheduling order's deadline for the amendment of pleadings, 496 days since the deadline for completion of discovery, and 236 days since Porter-Gaud filed its first motion for summary judgment); see also ECF No. 50 ¶¶ 4, 6. Porter-Gaud further asserts that Doe's proposed third amended complaint primarily rests on a theory that a Porter-Gaud guidance counselor exhibited bias against Doe when she encouraged Roe to file retaliatory complaints against Doe. Id.; see also ECF No. 153-1 ¶¶ 5–6, 8–12, 17–18, 34, 38–40. Doe's allegations in this regard are derived from the guidance counselor's deposition testimony, which was taken December 19, 2023, see ECF No. 161 at 10; see also ECF No. 118-10, and Doe makes no effort to explain why his first motion for leave was not filed shortly after this date, see ECF No. 153. Nor does Doe explain why he might have had good cause for waiting well over a year before seeking leave to amend

---

time Doe filed his first motion for leave. See ECF Nos. 153 at 1, 157. None of these filings discuss the Rule 16(b) standard that informs the court's analysis of whether leave should be granted to file an amended pleading. See ECF Nos. 144, 147, 157.

his complaint to include these allegations. See id. Despite Porter-Gaud's thorough response brief, Doe did not offer any reply brief to rebut these arguments.

Because Doe has not offered any supported factual or legal argument as to why good cause exists for allowing him leave to amend, the court is left without any basis to grant the motion. See ECF No. 153. Conversely, Porter-Gaud has advanced several persuasive arguments as to why an amendment to the complaint would be prejudicial at this phase in the proceedings. See ECF No. 161. As such, the court finds that Doe has not established good cause to amend the complaint well after the deadline set forth in the court's scheduling order. Because Doe has not met this threshold requirement, the court dispenses with analyzing whether justice requires granting leave to amend pursuant to Rule 15(a)(2). See, e.g., CBX Techns., Inc. v. GCC Techns., LLC, 2012 WL 3038639, at *4 (D. Md. 2012) (dispensing with Rule 15(a)(2) analysis because plaintiff had failed to show good cause under Rule 16(b)).

### 2. Second Motion for Leave

The court now turns to Doe's second motion for leave. Doe seeks leave to amend the complaint to include factual allegations relating to the T&M email that Porter-Gaud produced in response to the court's February Order. ECF No. 170 at 3–4. Doe also seeks leave to file a supplemental brief in opposition to Porter-Gaud's motions for summary judgment so that he might explain the T&M email's potential impact on the court's summary judgment analysis. Id. at 1–2. In opposition, Porter-Gaud states that it does not object to the court considering the T&M email when ruling on its motions for summary judgment but contests Doe's characterization of the T&M email as being "beyond unfounded." ECF No. 171 at 3. Porter-Gaud further argues that each party's briefing on

Doe's second motion for leave adequately informs the court of their respective positions on the T&M email, thus, eliminating the need for further briefing.  Id.   Porter-Gaud similarly opposes Doe's request for leave to amend the complaint, arguing that Doe need not "make specific allegations about the email in order to use it in this case."  Id. at 4.

The court agrees with Porter-Gaud that an amendment to the complaint is not necessary for the court to consider a single email produced in discovery.  See Faulconer v. Centra Health, Inc., 808 F. Appx. 148, 154 (4th Cir. 2020) ("[A] plaintiff does not have to allege in his complaint every fact on which he will rely at summary judgment.").  As such, the court denies Doe's second motion for leave to the extent that it requests leave to amend the complaint.

However, the court will grant Doe's second motion for leave to the extent that he seeks leave to file a supplemental brief in opposition to Porter-Gaud's motions for summary judgment.  While it may true, as Porter-Gaud suggests, that the parties have provided the court with their respective positions regarding the factual context of the T&M email, see ECF No. 161 at 3, the court finds that Doe should have the opportunity to specifically address how the T&M email might impact the court's summary judgment analysis.  As such, the court grants Doe's second motion for leave to the extent that he seeks leave to file a supplemental brief in opposition to Porter-Gaud's motions for summary judgment.  The court will also allow Porter-Gaud the opportunity to respond. While the court grants Doe's motion to this extent, the court cautions Doe that he is only permitted to argue the impact of the T&M email on Porter-Gaud's motions for summary judgment.  The court will not consider additional legal or factual arguments that could

13

have been made at the time Doe first responded to Porter-Gaud's motions for summary judgment.

## IV.   CONCLUSION

For the foregoing reasons, the court **DENIES** Porter-Gaud's motion to reconsider, ECF No. 166.  The court **DENIES** Doe's first motion for leave, ECF No. 153.  The court **GRANTS IN PART** Doe's second motion for leave to that extent that he seeks leave to file a supplemental brief in opposition to Porter-Gaud's motions for summary judgment and **DENIES IN PART** Doe's second motion for leave to the extent that he seeks leave to amend the complaint, ECF No. 170.  The court therefore **ORDERS** Doe to submit his supplemental briefing within ten (10) days of the court issuing this order.  After Doe submits his supplemental briefing, Porter-Gaud shall have seven (7) days to file a response brief.  Both parties' supplemental briefing shall not exceed ten (10) pages in length.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 31, 2026**
**Charleston, South Carolina**

14